**ALLIANCE ROYALTIES, LLC, Appellant,**

v.

**William A. BOOTHE, M.D., Wendy J. Boothe, W.A. Boothe Family, Ltd., GVLP, LLC, DVLP, LLC, NVLP, LLC and RVLP, LLC, Appellees.**

No. 05–09–01471–CV.

Court of Appeals of Texas, Dallas.

Nov. 24, 2010.

James W. Grau, Scott A. Whisler, Grau Koen, P.C., Dallas, TX, for Appellant.

Johnathan Nockles, Stephen F. Malouf, David W. Evans, The Law Offices of Stephen F. Malouf, P.C., William Ross Forbes, Jr., William D. Ellerman, Jackson Walker, L.L.P., Jason A. Copling, Munsch Hardt Kopf & Harr, P.C., Mark L. Johansen, Gruber Hurst Johansen & Hail, LLP,

James A. Fisher, Fisher Holmes & Turner, Dallas, TX, Jeffrey Thomas Knebel, Osborne, Helman, Knebel & Dellery, L.L.P., Austin, TX, for Appellees.

Before Justices FITZGERALD, MURPHY, and FILLMORE.

## OPINION

Opinion By Justice FITZGERALD.

This is an interlocutory appeal from the denial of appellant Alliance Royalties, LLC's (Alliance LLC's) special appearance. We conclude that Alliance LLC's contacts with Texas are sufficient to support the trial court's exercise of jurisdiction. Accordingly, we affirm the trial court's order.

### BACKGROUND

This complex multi-party, multi-claim lawsuit began as an interpleader action by Compass Royalty Management, L.L.C. Compass alleged it had received competing claims to certain oil and gas royalty interests, and requested that the court declare the parties' rights and duties with respect to the royalty payments. Compass has paid the disputed funds into the registry of the court.

Appellant Alliance LLC was incorporated in Nevis, an island in the West Indes. Alliance Royalties, Inc. (Alliance Inc.), a separate company, was incorporated in the Caribbean island of Anguilla. Alliance Inc. is a party in the proceedings below but did not contest the trial court's jurisdiction. Duane Crithfield is the President of Alliance Inc. and is also a party to the proceedings below. Crithfield specifically disclaims any connection with Alliance LLC. While Alliance Inc. and Crithfield are not parties to this appeal, the facts regarding their relationship to Alliance LLC are hotly disputed and highly relevant to Alliance LLC's special appearance.

Appellees William A. Boothe, M.D., Wendy J. Boothe, and W.A. Boothe Family Ltd. (collectively the Boothes) are residents of Dallas, Texas. Appellees GVLP, LLC, DVLP, LLC, NVLP, LLC, and RVLP, LLC (collectively the Vento entities) are Nevis corporations. The Boothes and the Vento entities separately invested funds that, through a series of complicated transactions, were used to purchase oil and gas mineral interests from Noble Royalties, an entity headquartered in Dallas, Texas. Compass is a wholly-owned subsidiary of Noble.

The Boothes and the Vento entities have filed cross-claims and third-party actions against Alliance Inc., Alliance LLC, and Crithfield, alleging fraud and other causes of action. Alliance LLC filed a special appearance to challenge the trial court's jurisdiction and requested dismissal of all claims asserted against it. After a hearing, the trial court denied Alliance LLC's special appearance, and filed findings of fact and conclusions of law. This interlocutory appeal followed.

### STANDARD OF REVIEW AND BURDEN OF PROOF

On review of an order deciding a special appearance, we review the trial court's factual findings for sufficiency of the evidence, but we review de novo its ultimate conclusion as to the propriety of personal jurisdiction as a conclusion of law. *Capital Tech. Info. Servs., Inc. v. Arias & Arias Consultores*, 270 S.W.3d 741, 747–48 (Tex. App.-Dallas 2008, pet. denied) (en banc). The supreme court has explained our standard of review where, as here, the trial court has entered findings of fact and conclusions of law:

If a trial court enters an order denying a special appearance, and the trial court issues findings of fact and conclusions of law, the appellant may challenge the fact

findings on legal and factual sufficiency grounds. Our courts of appeals may review the fact findings for both legal and factual sufficiency.

Appellate courts review a trial court's conclusions of law as a legal question. The appellant may not challenge a trial court's conclusions of law for factual insufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness. If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal.

*BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002) (citations omitted).

The plaintiff bears the initial burden of pleading jurisdictional facts sufficient to bring the defendant within the reach of the Texas long-arm statute. *Capital Tech. Info. Servs., Inc.,* 270 S.W.3d at 748. The specially appearing defendant must then negate all bases for personal jurisdiction alleged by the plaintiff. *Id.* If the nonresident defendant produces evidence negating personal jurisdiction, the burden returns to the plaintiff to show, as a matter of law, that the court had personal jurisdiction over the nonresident defendant. *Assurances Générales Banque Nationale v. Dhalla,* 282 S.W.3d 688, 695–96 (Tex. App.-Dallas 2009, no pet.).

■ Alliance LLC's first issue on appeal relates to this burden of proof. Citing *Kelly v. General Interior Construction,*

*Inc.,* 301 S.W.3d 653 (Tex.2010), Alliance LLC argues that appellees' pleading asserting their cross-claims must allege the basis for the trial court's exercise of jurisdiction. Alliance LLC argues appellees' pleadings did not allege facts to satisfy this initial burden; rather, their jurisdictional allegations were contained only in their response to Alliance LLC's special appearance. Alliance LLC further maintains that appellees' response to the special appearance is not a "pleading" under rule 120a(3) of the Texas Rules of Civil Procedure, and therefore, the burden never shifted to Alliance LLC to negate jurisdiction beyond presenting evidence that it is a nonresident. *See Dhalla,* 282 S.W.3d at 695.

While there is some language in *Kelly*[1] to support Alliance LLC's argument, we conclude the trial court correctly considered the response to the special appearance as well as the appellees' pleadings. We have held that a plaintiff may carry its initial burden of pleading sufficient allegations to invoke jurisdiction in its "original pleadings as well as its response to the defendant's special appearance." *Flanagan v. Royal Body Care, Inc.,* 232 S.W.3d 369, 374 (Tex.App.-Dallas 2007, pet. denied) (citing Tex.R. Civ. P. 120a(3) and *Ennis v. Loiseau,* 164 S.W.3d 698, 705 (Tex.App.-Austin 2005, no pet.)). In *Flanagan,* we specifically noted that we disagreed "with Flanagan's argument that our review is limited only to the jurisdictional allegations made in RBC's third-party petition." *Flanagan,* 232 S.W.3d at 374 n. 5. The *Kelly* court did not overrule or discuss these cases permitting jurisdictional alle-

---

1. *See Kelly,* 301 S.W.3d at 658–59 ("Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading."); *id.* at 658 n. 4 (pleadings "are essential to frame the jurisdictional dispute," and additional evidence presented "merely supports or undermines the allegations in the pleadings"); *id.* at 660 ("Because GIC failed to plead jurisdictional facts, the Officers could, and did, meet their burden to negate all bases of jurisdiction by proving that they do not live in Texas.").

gations to be included in a response to a special appearance. In fact, the *Kelly* court noted that GIC did not "present any responsive evidence establishing the requisite link with Texas," 301 S.W.3d at 660, and concluded, "[i]n short, GIC's rebuttal evidence is as silent as its pleadings regarding the Officers' Texas contacts related to its claims." *Id.* We conclude the trial court correctly considered appellees' responses to Alliance LLC's special appearance and the evidence submitted with them. We overrule Alliance LLC's first issue.

## ANALYSIS

Alliance LLC alleges the trial court erred by denying its special appearance. The Texas long-arm statute reaches as far as due process allows. *Capital Tech. Info. Servs., Inc.,* 270 S.W.3d at 748. Accordingly, a Texas court may exercise personal jurisdiction over a nonresident defendant if (1) the defendant has minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.*

The test for minimum contacts depends on whether the plaintiff's claim relates to the defendant's contacts with Texas. If the claim is not related to the defendant's Texas contacts, then the plaintiff relies on "general jurisdiction" over the defendant, which requires a showing that the defendant has established continuous and systematic contacts with the forum state. *Id.* at 749. Appellees do not assert Texas has general jurisdiction over Alliance LLC. Rather, the jurisdictional basis pleaded by appellees relates to their investments in

specific transactions with Alliance LLC. This is an assertion of "specific jurisdiction," i.e., jurisdiction that is established if the defendant's alleged liability arises from or is related to activity conducted within the forum state. The minimum contacts analysis for specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. *Id.* Specific jurisdiction minimum contacts are present if (1) the defendant purposefully availed himself of the privilege of conducting activities in the forum state, and (2) there is a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 576, 585 (Tex. 2007).

To discern whether a defendant has sufficiently "purposefully availed" itself of a forum, we consider three factors. First, we must disregard any forum contacts that resulted solely from the unilateral activity of another party or third person. *Michiana Easy Livin' Country v. Holten,* 168 S.W.3d 777, 785 (Tex.2005). Second, we consider whether the defendant's contacts with the forum are "purposeful" rather than "random, isolated, or fortuitous." Random, isolated, or fortuitous contacts are not sufficient to justify haling a defendant into the forum's courts. *Id.* Third, "availment" means that the defendant must have sought some benefit, advantage, or profit by its forum-directed activities and invoked the benefits and protections of the forum's laws in some fashion. *Id.*

■ In its second issue, Alliance LLC contends the trial court erred in denying its special appearance, specifically attacking four purported contacts with Texas.[2]

---

**2.** Alliance LLC's second issue asks, "Did the trial court err in denying the Special Appearance because: (a) Alliance LLC never specified that any of the subject royalty interests—in which it holds ... unrecorded security

interests—be located in 23 states, including Texas, (b) the Boothes misbrand a purported settlement agreement as entered by or on behalf of Alliance LLC; (c) the agency relationship between Duane Crithfield ... and

In its fourth issue, Alliance LLC argues the trial court's findings of fact are contrary to the evidentiary record. We consider these issues together to determine whether there is evidence to support the trial court's findings and conclusions that Alliance LLC had minimum contacts with Texas.

Both parties presented evidence relevant to Alliance LLC's special appearance. Alliance LLC offered evidence through the affidavit of Deborah Tyrell that it is organized under the laws of Nevis. The sole manager of Alliance LLC is Fidelity Management, Ltd., also organized under the laws of Nevis. Tyrell also testified that Crithfield is not, and has never been, an officer, director, member, manager, registered agent, or owner of Alliance LLC, and has never been authorized to contract on its behalf. Tyrell further testified that Alliance LLC does not have a registered agent in Texas, does not maintain a place of business in Texas, and has never transacted business in Texas. Tyrell stated that there have never been any contacts between Compass and Alliance LLC, and Alliance LLC has never acquired any interest in the oil and gas royalties at issue in the lawsuit. Tyrell specifically denied that Alliance LLC had ever received any royalty interest payment of any kind from Compass. Tyrell also specifically denied that Alliance LLC entered into any transaction relating to the "Premont investment" (relating to a portion of the royalty interests at issue); she offered an explanation as to why Alliance LLC's name mistakenly appears on documents relating to that investment.

Alliance LLC maintains any contacts with Texas relating to the Boothes' and Vento entities' claims were by Alliance Inc. or other third parties, not Alliance LLC. *See Michiana Easy Livin' Country*, 168 S.W.3d at 785 (court should disregard contacts resulting solely from unilateral activity of third party). According to Alliance LLC, the contractual relationships of the Boothes and Vento entities are with a Nevis company, First Fidelity Trust, Ltd., not with Alliance LLC. The Boothes and the Vento entities contributed funds to offshore "structures," which included foreign trusts, foreign limited liability entities, and foreign variable insurance policies. Alliance LLC argues "the essential requirement of each of these structures is the surrender of any interest and control over the funds contributed." The insurance policies in question expressly provide that they are to be governed by the law of Anguilla, and Anguillan courts have exclusive jurisdiction to resolve disputes.

Also according to Alliance LLC, Alliance Inc. invested approximately $26.3 million in five separate private placement offerings of oil and gas royalty interests known as Cottonwood, Drake, Elk Horn, Premont, and Teal, offered by Noble Royalties or related companies. Alliance Inc. received an undivided tenant-in-common interest in the wells located on the respective properties. In connection with four of the investments, Alliance Inc. (and not Alliance LLC) entered into identical management agreements with Compass, a wholly-owned subsidiary of Noble that is in the business of managing oil and gas interests for investors. For the fifth investment, Premont, Alliance LLC entered into the management agreement with Compass. Alliance LLC contends the agreement's references to it as a party are "scrivener's errors" because Crithfield, who signed the documents on Alliance LLC's behalf, had

Alliance LLC is a veiled attempt by the Boothes to circumvent the burden shift of jurisdictional veil-piercing; and (d) Alliance

LLC has otherwise negated the bases for the assertion of jurisdiction by the trial court."

no authority to do so. The royalty interests underlying the five investments are located in 23 states, including Texas.

Alliance LLC contends the investments in the oil and gas royalty interests were made solely by Alliance Inc. Alliance LLC maintains any payments made relating to these investments were made to, and received by, Alliance Inc. Alliance LLC also contends it did not specify that any of the royalty interests be located in Texas or any other state.

Appellees argue that even if Alliance LLC's version of the foregoing facts is correct, Alliance LLC has its own contacts with Texas. Appellees point to undisputed facts relating to five promissory notes executed by Alliance Inc. in favor of Alliance LLC in 2006. Under these notes, Alliance Inc. promised to pay Alliance LLC the principal sum of $26,198,459.36 plus interest. As explained by Alliance LLC in its brief, "[t]he notes are secured by Alliance Inc.'s interest in the multi-state royalty offerings made the subject of the Investments." Alliance LLC notes that it "deliberately decided not to record the Note interests." Alliance LLC also emphasizes that the notes provide for enforcement under the laws of Anguilla; designate Anguilla as the forum for resolving disputes; and do not specify the field, formation, or State of the interests in the collateral. Alliance LLC does not dispute the existence or validity of these notes, or that it holds a security interest in the Noble royalties through them. Alliance LLC also does not dispute that its only revenues come from these notes, secured by the royalty interests. The evidence shows that at least half of the royalties paid by Compass (whether to Alliance Inc., as Alliance LLC contends, or to Alliance LLC) have come from oil and gas properties located in Texas. Alliance LLC also does not dispute that Alliance Inc. cannot

"pledge, assign, transfer or dispose of the real property interest" without Alliance LLC's consent.

The record includes a letter from Alliance LLC's counsel to counsel for Compass describing the royalty interests at issue as "the royalty revenues owned by and recorded solely to the interest of Alliance Royalties, LLC ('Alliance')." The letter continues, "[a]ttached find a chart and narrative description of the manner in which all entities and interests are structured within the network of relationships which eventually lead to Alliance." The attached narrative includes the assertion that "[a]s the purchaser of the royalty interests, Alliance Royalties, LLC is entitled to any and all royalty distributions from those interests, and Compass Royalties Management LLC ('Compass') has contractually bound itself to make full and timely payment of such distributions to Alliance Royalties, LLC alone." The narrative concludes, "Noble Royalties or its affiliates have no legal or equitable basis on which to withhold payments representing payment of royalty interests wholly owned by and wholly recorded for the benefit of Alliance Royalties, LLC." The letter complains of interference "with the recorded real property rights of Alliance." Alliance LLC now dismisses this letter as inaccurate.

Appellees rely on *Retamco Operating Inc. v. Republic Drilling Co.*, 278 S.W.3d 333 (Tex.2009). In that case, Retamco Operating, Inc. (ROI), a Texas corporation, sued Paradigm Oil, Inc., another Texas corporation, in Texas, and won a $16 million default judgment. *Id.* at 336. ROI then amended its petition to include a claim against Republic Drilling Co., a California corporation, alleging Paradigm had fraudulently transferred interests in certain Texas mineral wells and leases to Republic in order to avoid ROI's claims.

*Id.* Republic contested personal jurisdiction. *Id.* The Texas Supreme Court held that Republic purposefully availed itself of the benefits of Texas law by accepting the transfers, and that ROI's claim had a substantial connection to Republic's purposeful availment of Texas. *Id.* at 339. The court reasoned:

> Republic's contacts with Texas were purposeful, not random, fortuitous, or attenuated. Oil and gas interests are real property interests. [Citations omitted.] Republic was aware that the oil and gas interests it received were located in Fayette, Dimmit, and Webb Counties, Texas. Thus, Republic purposefully took assignment of Texas real property.... Republic, by taking assignment of Texas real property, reached out and created a continuing relationship in Texas. Under the assignment, it is liable for obligations and expenses related to the interests. This ownership also allows Republic to "enjoy ... the benefits and protection of [Texas laws.]" [Citations omitted.] Unlike personal property, Republic's real property will always be in Texas, which leaves no doubt of the continuing relationship that this ownership creates.

*Id.*

Alliance LLC attempts to distinguish *Retamco*, arguing it took security interests in royalty interests that exist in 23 states including Texas; the security agreement did not identify the locations of the relevant mineral properties; the notes that are secured by the royalty interests contain Anguilla choice-of-law and forum selection clauses; and Alliance LLC deliberately chose not to record its security interests in Texas. Despite these distinctions, the evidence in the record shows Alliance LLC was aware the royalty interests in question were connected to Texas. The record includes evidence of a presentation made by Crithfield attended by a representative of the Vento entities regarding Alliance LLC's investment opportunity with Noble Royalties. The presentation identifies Alliance LLC as an investment option in oil royalties, and identifies "Noble Royalties, Inc. of Dallas, Texas" as "one of the leaders in oil royalty programs." Further, the documents relating to the Premont properties include a participation agreement that identifies Premont Royalties LLC as a Texas limited liability company, includes choice-of-law and forum selection provisions designating Texas, is signed by Crithfield on behalf of Alliance LLC, and provides that notices shall be given to Premont Royalties LLC and Compass in Texas. And Crithfield on behalf of Alliance LLC signed a letter retaining legal counsel to represent it in Texas regarding "investments made in oil and gas projects promoted by Noble Royalties and/or affiliates."

The Boothes point to Crithfield's June 2008 trip to Texas to discuss a significant loss of value in the Boothes' investment in the "Fixed 8 Fund." The Fixed 8 Fund was one of the investments solicited by Alliance Holding Company, of which Crithfield was managing director and chairman. Alliance LLC is a subsidiary of Alliance Holding Company, according to the testimony of Keithley Lake, who also testified he has controlled Alliance LLC since its inception. Lake and Crithfield are both shareholders of Alliance Holding Company. William Boothe testified that Crithfield told him the Fixed 8 Fund was "backed up" by the royalty interests purchased from Noble Royalties; the primary value remaining in the Fixed 8 Fund was the interest in the royalties; and that the royalties were paying only a two percent return. Boothe requested that the royalty interests be transferred to him, and agreements were drawn up to accomplish this purpose. Lake signed the documents as

the manager of First Fidelity Trust, Ltd., an entity that is the registered agent for Alliance LLC; Crithfield and Lake are also directors of this entity. The agreements recite that Alliance LLC "received ownership of royalty interest in various properties acquired from Noble Royalties, Inc." The Boothes argue that even though these agreements were later breached, they nonetheless constituted a representation by Alliance LLC through Lake that Alliance LLC owned the royalty interests.

The trial judge entered findings of fact in favor of both the Vento entities and the Boothes. Alliance LLC does not challenge several of the sixteen findings relating to the Vento entities. Among these unchallenged findings are that Alliance LLC has a security interest in the Noble royalties, which includes a security interest in real property in Texas, and this security interest is contained in the promissory notes from Alliance Inc. to Alliance LLC. The trial judge also found the Noble royalties "are the real property in dispute in this lawsuit"; Noble is a Dallas, Texas-based entity; and its subsidiary Compass is also based in Dallas, Texas. Finally, Alliance LLC does not dispute the trial court's finding that Alliance LLC retained a Texas law firm in January 2008 to represent it in disputes relating to the Noble royalties, and Alliance LLC's counsel represented to counsel for Noble and Compass that Alliance LLC owned the Noble royalties.

Similarly, Alliance LLC does not challenge several of the trial court's findings relating to the Boothes. The trial court found that Crithfield is a partial owner of Alliance Holding Co. and manages and controls a variety of companies associated with or owned by Alliance Holding Co. The promissory notes between Alliance Inc. and Alliance LLC provide that Alliance Inc. shall not pledge, assign, transfer, or dispose of the Noble royalties without Alliance LLC's consent. In June 2008, William Boothe met with Crithfield in Texas. Crithfield represented that Boothe's investment had been substantially depleted, and the only significant value remaining was the Noble royalties. Boothe asked for all the Noble royalties to be transferred to the Boothes directly. Although Alliance LLC disputes several of the trial court's findings relating to this transfer, it does not challenge the trial court's findings that Keithley Lake, the trustee for the Boothes' family trust and also the manager of Alliance LLC, agreed to the transfer of the Noble royalties to the Boothes.

Alliance LLC does challenge the trial court's findings on a number of issues. As to the Boothes, Alliance LLC complains of the findings regarding Crithfield's trip to Texas and the attempt to settle the dispute with the Boothes. Alliance LLC argues "the uncontested evidence is that Alliance LLC is not a signatory to the 'settlement agreement.'" Alliance LLC further complains of the trial court's conclusions of law that "Alliance LLC used to its advantage the material misrepresentations about the nature of the Noble Royalties investments, which were made by Crithfield in his meeting in Texas with Dr. Boothe, when it entered into the agreements to transfer the Noble Royalties to the Boothes," and that "[b]y accepting the benefits of Crithfield's contacts, Alliance LLC could reasonably anticipate being haled into a Texas court in a dispute relating to the Noble Royalties." We disagree with Alliance LLC that the evidence relevant to these findings and conclusions is uncontested. The record reflects Crithfield's trip to Texas; evidence of the representations made, through testimony and supporting documentation, including the representation that Alliance LLC received ownership of the royalty interests in question; evidence that a dispute existed with Noble Royal-

ties; Lake's and Crithfield's ownership or control of the entities involved; and a signed contract under which royalty interests owned by Alliance LLC would be transferred to the Boothes, Texas residents. We conclude the evidence is sufficient to support the trial court's findings and conclusions that are challenged by Alliance LLC.

Similarly, we conclude the evidence is sufficient to support the trial court's findings relating to the Vento entities. Alliance LLC points to evidence it argues is in conflict with the trial court's findings regarding representations made in Crithfield's presentation referencing Alliance LLC, Crithfield's authority to act on behalf of Alliance LLC, the signing of the Premont documents, and payment of royalty revenues by Compass. Alliance LLC summarizes its complaint by arguing that the trial court "erroneously subjected a foreign entity, Alliance LLC, to jurisdiction in Texas," premised on Alliance Inc.'s purchase of oil and gas royalties "throughout the U.S., including Texas, to which Alliance LLC holds a security interest under the Notes." Alliance LLC concludes there is no evidence to support the trial court's findings or the greater weight of the evidence is against the findings.

Alliance LLC also argues that "jurisdictional veil-piercing is not justified by the facts," citing *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163 (Tex. 2007). In *PHC–Minden,* the court discussed imputing the contacts of one corporation to a related corporation in order to establish the "systematic and continuous" contacts required for general jurisdiction. *Id.* at 172. The question raised here by Alliance LLC, however, is whether Crithfield had authority to act on its behalf in particular transactions, not whether Alliance Inc.'s or even Crithfield's contacts with Texas can be imputed to Alliance

LLC for jurisdictional purposes. There is no question that Alliance LLC, not Alliance Inc., entered into the Premont agreements; that its name was used in Crithfield's presentation; or that Alliance LLC through its counsel claimed ownership of the royalty interests. The only question is whether these actions were "scrivener's errors" or mistakes as Alliance LLC claims. The trial court was within its discretion to consider the conflicting evidence and reject Alliance LLC's version of events. As we have noted, "[i]t is the classic province of the trier of fact to pass upon the credibility of evidence introduced before it and to accept all, part, or none of it." *In re L.A.F.*, 270 S.W.3d 735, 740 (Tex.App.-Dallas 2008, pet. denied).

Based on the evidence offered by appellees as well as by Alliance LLC, the trial court could have concluded Alliance LLC had purposeful contacts with Texas. *See Michiana Easy Livin' Country,* 168 S.W.3d at 785. As discussed above, the transactions related to the royalty interests involved Texas real property, contracts with Texas entities, travel to Texas, representations made in Texas, and attempts at dispute resolution in Texas, and the evidence supports the conclusion that many of these contacts were made by Alliance LLC rather than its affiliates. Similarly, the evidence supports a conclusion that Alliance LLC sought a benefit, advantage, or profit from its contacts. *Id.* Alliance LLC's only source of revenue was from the royalty interests, and more than half of those funds came from interests in Texas. *See Retamco,* 278 S.W.3d at 340 (Republic sought benefit from transaction where it "gave Republic valuable assets in Texas," and where "Republic has reaped benefits from the property in the amount of approximately $1.2 million in revenues").

In addition, there is a substantial connection between Alliance LLC's contacts and the operative facts of this litigation. *See Moki Mac River Expeditions*, 221 S.W.3d at 585. Compass as plaintiff filed an interpleader action to resolve conflicting claims among appellees and Alliance LLC to the same royalty interests that were involved in Alliance LLC's contacts with Texas. The trial court will determine which of the parties claiming ownership of the Noble royalties is the rightful owner, in the process resolving the various counter- and cross-claims among the parties. Revenues from Texas real property interests are the majority of the interpleaded funds. As in *Retamco*, the royalty interests in Texas will "at the very least . . . have a substantial connection to the operative facts." *Retamco*, 278 S.W.3d at 341. Because we conclude Alliance LLC had minimum contacts with Texas, we overrule its second and fourth issues.

▆▆▆ Even if Alliance LLC has minimum contacts with Texas, however, the trial court's assertion of jurisdiction over it must comport with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In its third issue, Alliance LLC argues the trial court's denial of its special appearance was unreasonable and violated this standard. We consider several factors in our review: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; and (3) the plaintiff's interest in obtaining convenient and effective relief. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 232 (Tex.

1991) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174).[3] We should give "significant weight" to "the unique burdens placed upon one who must defend oneself in a foreign legal system." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

Alliance LLC argues the appellees purposefully availed themselves of the legal protections of Nevis and Anguilla by seeking out and bargaining for the offshore investments they made. Alliance LLC points out that the notes setting out the security interest appellees claim as the basis for the exercise of jurisdiction in Texas expressly provided for the application of the laws of Anguilla. Alliance LLC concludes these facts evaluated under the *Burger King* standard weigh heavily against the exercise of jurisdiction by the trial court.

"Only in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Retamco Operating, Inc.*, 278 S.W.3d at 341 (citing *Guardian Royal*, 815 S.W.2d at 231). As the *Retamco* court reasoned, "Texas has an interest in resolving controversies involving real property within its borders," *id.* at 342, and as discussed above, Texas real property is involved in this dispute. Further, this litigation began in Texas when Compass filed its interpleader action to determine whether Alliance LLC or its investors owned the royalty interests in question. *See id.*

**3.** Two other factors, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental social policies, do not apply where the dispute is not "between coequal sovereigns in our federal system," but involves an international dispute. *Guardian Royal*, 815 S.W.2d at 232 n. 17.

(plaintiff had interest in resolving controversy in Texas "because that is where the litigation began"). While Alliance LLC may be burdened by litigating outside Nevis, the other factors weigh heavily against this burden. *See id.* We overrule Alliance LLC's third issue.

### CONCLUSION AND DISPOSITION

We conclude that Alliance LLC's contacts with Texas were sufficient to support the trial court's exercise of jurisdiction over it. We affirm the trial court's order denying Alliance LLC's special appearance.