**SHELTER MUTUAL INSURANCE COMPANY, Appellant,**

v.

**DALLAS COUNTY HOSPITAL DISTRICT d/b/a Parkland Health Hospital System, Appellee.**

No. 05–11–00488–CV.

Court of Appeals of Texas, Dallas.

May 7, 2012.

Rehearing Overruled June 7, 2012.

Jeremy W. McKey, Ekvall, Byrne, LLP, Dallas, TX, for Appellant.

Douglas D. Turek, Parul Das, Jessica Guobadia, Turek DeVore, PC, The Woodlands, TX, Sean A. Clemmensen, Thompson, Coe, Cousins, Irons, L.L.P., Wm. Lance Lewis, Quilling, Selander, Lownds, Winslett & Moser, P.C., Courtney Nicole Kano, Suzanne I. Calvert & Associates, Carlos A. Balido, Walters Balido & Crain, LLP, Karl Koen, Grau Koen, PC, Richard J. Byrne, Ekvall & Byrne, L.L.P., Dallas, TX, John Charles Nohinek, Richardson, TX, for Appellee.

Before Justices MORRIS, RICHTER, and LANG-MIERS.

## OPINION

Opinion By Justice MARTIN RICHTER.

In this interlocutory appeal from the trial court's denial of its special appearance, appellant Shelter Mutual Insurance Company ("Shelter") asserts it has insufficient contacts with the State of Texas to support the exercise of jurisdiction. Because we conclude Shelter's contacts with Texas are sufficient to support general jurisdiction and the exercise of jurisdiction is consistent with traditional notions of fair

play and substantial justice, we affirm the trial court's order.

## BACKGROUND

Shelter issued an automobile insurance policy to Oklahoma residents John and Rachel McCollum ("McCollum"). McCollum was subsequently involved in an automobile accident with Norma Salazar and others. Salazar was treated for injuries arising out of the accident at the Dallas County Hospital District d/b/a Parkland Health and Hospital System ("Parkland"). Parkland then filed hospital liens to secure payment for Salazar's treatment from the liable third party.

Salazar presented a claim against McCollum to Shelter. When Shelter settled Salazar's claim without satisfying Parkland's hospital lien, Parkland filed suit seeking recovery under the Texas Hospital and Emergency Services Lien Statute. See TEX. PROP.CODE ANN. § 55.002(a) (West 2007). Parkland's petition asserted that Shelter is an insurance company doing business in Texas who could be served through its registered agent for service of process in Texas, CT Corporation.

Shelter filed a special appearance to challenge the court's exercise of personal jurisdiction. Parkland responded, and following a hearing, the trial court denied Shelter's special appearance. This interlocutory appeal followed.

## DISCUSSION

In a single issue, appellant contends the trial court erred in denying its special appearance because it is a non-resident and not otherwise amenable to suit in Texas. Parkland responds that the court may properly exercise general jurisdiction over Shelter because it is licensed to do business in the state of Texas and therefore has sufficient minimum contacts to satisfy due process. We agree with Parkland.

■■■ Texas courts may exercise personal jurisdiction over nonresident defendants in accordance with the Texas long-arm statute. TEX. CIV. PRAC. & REM.CODE ANN. § 17.041–.045 (West 2008). The plaintiff bears the initial burden of pleading facts sufficient to bring the defendant within the reach of the Texas long-arm statute. Id.; BMC Software, Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex.2002). Alliance Royalties, LLC v. Boothe, 329 S.W.3d 117, 120 (Tex.App.-Dallas 2010, no pet.). The burden then shifts to the defendant to negate all bases for personal jurisdiction asserted by the plaintiff. Id. If the defendant does so, the burden shifts back to the plaintiff to show the court has personal jurisdiction over the defendant as a matter of law. Id.

■■■ Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law. Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 790–91 (Tex.2005). Because the trial court's exercise of personal jurisdiction over a nonresident defendant is one of law, an appellate court reviews the trial court's determination of a special appearance de novo. Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex.2007); BMC Software, 83 S.W.3d at 794. When a party challenges a trial court's ruling on a special appearance, and the court did not make findings of fact and conclusions of law, we infer all facts necessary to support the judgment if they are supported by the evidence. Moki Mac, 221 S.W.3d at 574; BMC Software, 83 S.W.3d at 794–95.

■■■ The Due Process Clause of the Fourteenth Amendment operates to limit the power of a state to assert personal jurisdiction over a nonresident defendant. Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County, 480 U.S. 102, 108, 107 S.Ct. 1026, 94 L.Ed.2d 92

(1987); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 294, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under the Due Process Clause, personal jurisdiction over a nonresident defendant is constitutional when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174; *Int'l Shoe,* 326 U.S. at 320, 66 S.Ct. 154.

A defendant's contacts with a forum may give rise to either general or specific jurisdiction. Here, Parkland contends Shelter is subject to general jurisdiction. General jurisdiction arises when the defendant's contacts with the forum are continuous and systematic. *American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 807 (Tex.2002).

Purposeful availment is the touchstone of the jurisdictional due process analysis. *Asahi,* 480 U.S. at 108–09, 107 S.Ct. 1026; *Capital Technology Information Services, Inc. v. Arias & Arias,* 270 S.W.3d 741, 750 (Tex.App.-Dallas 2008, pet. denied). A nonresident defendant's activities must be purposefully directed toward the forum state so that the nonresident defendant could foresee being haled into court there. *See Burger King,* 471 U.S. at 474, 105 S.Ct. 2174. There are three parts to a purposeful availment in-

quiry: (1) only the nonresident defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person; (2) the contacts relied on must be purposeful rather than random, fortuitous, or attenuated; and (3) the nonresident defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Moki Mac,* 221 S.W.3d at 575; *Capital Tech.,* 270 S.W.3d at 750.

There is no indication that the parties conducted any jurisdictional discovery and there is no reporter's record of the hearing. Therefore, our determination turns on whether the affidavits Shelter filed in support of its special appearance are sufficient to negate the bases for jurisdiction asserted by Parkland. *See Alliance,* 329 S.W.3d at 120.

Shelter filed two affidavits—the affidavit of James Tuley and the affidavit of Tina Watson. Watson is the claims adjuster who processed and negotiated Salazar's claim against McCollum. Watson details the process of settling the claim through Shelter's branch office in Oklahoma. Although Watson's affidavit establishes that the accident occurred in Oklahoma and the insurance policy was issued to Oklahoma residents through an Oklahoma agent, it does not negate Parkland's allegation that Shelter does business in the State of Texas.

The Tuley affidavit states that Shelter is a mutual property and casualty insurance company domiciled in Missouri and operating in Arkansas, Colorado, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Nebraska, Nevada, Oklahoma, and Tennessee. According to Tuley, Shelter does not own or possess any real estate in Texas, have policies or rates filed in Texas, or have a Texas office or employees. Tuley further states that Shelter ceased writing direct

insurance coverage in Texas in 1977, but provides reinsurance coverage to seventeen Texas companies. This reinsurance coverage yielded a signed premium of $3,064,918 for the 2010 underwriting year, and represented 0.40% of the net premium earned by Shelter. The Tuley affidavit also states that Shelter "has no appointed agents in Texas and has had no agents in Texas since 1977."

In its response to Shelter's special appearance, Parkland asserts that Shelter is licensed by the Texas Department of Insurance and has been so since 1961. Parkland contends that Shelter maintains an active license to issue reinsurance policies as well as insurance for allied coverages, auto liability, auto physical damage, boiler and machinery, burglary and theft, credit, employers' liability, fidelity and surety, fire, glass, inland marine, livestock, and rain. Parkland also asserts that as a licensed insurance company, Shelter maintains an agent for service of process in Dallas, Texas. Of all of Parkland's assertions, the only jurisdictional fact about which Shelter arguably raised any question concerns the appointment of an agent.

Although Shelter claimed to have no "appointed agents" in Texas, it is unclear whether Shelter intended to include its registered agent for service of process in this definition, or used the term more restrictively to signify an agent for purposes of issuing insurance. Conversely, there is no indication that Shelter was not served with this lawsuit through its registered agent CT Corporation in Dallas, Texas, and Tuley did not specifically refute that CT Corporation is Shelter's registered agent. Because the trial court did not make findings of fact and conclusions of law, we assume the trial court resolved this apparent ambiguity in favor of jurisdiction. *See Moki Mac,* 221 S.W.3d at 574.

Despite the fact that Shelter established it currently writes only policies for reinsurance in Texas and such policies account for an insignificant amount of its overall revenue, Shelter failed to negate that it maintains a license to do business in Texas and systematically conducts business in Texas with Texas insurance companies. Under the long-arm statute, Texas courts can exercise personal jurisdiction over a nonresident defendant who "does business" in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (West 2008); *BMC Software,* 83 S.W.3d at 795. Regardless of the type of policies it actually issues, by seeking and maintaining a license to issue insurance policies in Texas and by actually issuing such policies to Texas companies, Shelter has purposefully availed itself of the benefits of conducting business in Texas. Notwithstanding the amount of revenue that may ultimately be generated, Shelter seeks a profit or benefit by issuing insurance policies in Texas. Therefore, we conclude Shelter's contacts with Texas are such that it could reasonably foresee being haled into a Texas court.

Having concluded that Shelter has minimum contacts with the State of Texas, we must now determine whether the exercise of jurisdiction comports with the notions of fair play and substantial justice. *See Burger King,* 471 U.S. at 477, 105 S.Ct. 2174. We evaluate the contact in light of: (1) the defendant's burden; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the states' shared interest in furthering fundamental substantive social policies. *Id.; TexVa, Inc. v. Boone,* 300 S.W.3d 879, 891 (Tex.App.-Dallas 2009, pet. denied). Once a court determines that a nonresident defendant has purpose-

fully established minimum contacts, only in rare instances will the exercise of jurisdiction not comport with fair play and substantial justice. *Petrie v. Widby,* 194 S.W.3d 168, 175 (Tex.App.-Dallas 2006, no pet.) (citing *Guardian Royal Exch. Assurance, Ltd.,* 815 S.W.2d 223, 231 (Tex. 1991)).

■ In a special appearance, a defendant bears the burden of presenting "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Guardian,* 815 S.W.2d at 231 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). In the instant case, however, Shelter offered no evidence that the exercise of jurisdiction would be burdensome, unreasonable, or unjust. On the other hand, there is no question that Parkland has an interest in receiving payment for the healthcare services it provides within the borders of this state, or that Texas has an interest in the enforcement of statutes enacted to secure such payment. In fact, all states and their courts share a fundamental interest in ensuring that healthcare providers in a given state are compensated for the emergency treatment they provide to residents and nonresidents alike. The efficient resolution of controversies within the interstate system is best served by requiring companies licensed to do business in a particular state to answer for alleged statutory violations within that state. In light of these considerations, we conclude that the exercise of jurisdiction over Shelter comports with the notions of fair play and substantial justice. Shelter's issue is overruled. The trial court's order denying Shelter's special appearance is affirmed.