

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00647-CV

**ACCELERATED WEALTH, LLC** and Accelerated Wealth Group, LLC,
Appellants

v.

**LEAD GENERATION AND MARKETING, LLC**,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-09405
Honorable Michael P. Peden, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:       Catherine Stone, Chief Justice
               Sandee Bryan Marion, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  March 20, 2013

AFFIRMED

This is an accelerated appeal of the trial court's order denying the special appearances filed by Accelerated Wealth, LLC and Accelerated Wealth Group, LLC (collectively referred to herein as "Accelerated Wealth").  Accelerated Wealth asserts the trial court erred in denying the special appearances because: (1) the trial court could consider only the allegations contained in Lead Generation and Marketing, LLC's original petition; (2) the trial court could not consider evidence of any contacts that occurred after the date the original petition was filed; and (3) the allegations contained in the original petition and the evidence of the contacts that occurred before

the date the original petition was filed did not establish general jurisdiction over Accelerated Wealth. We affirm the trial court's order.

## MINIMUM CONTACTS ANALYSIS AND STANDARD OF REVIEW

"Whether a court has personal jurisdiction over a defendant is determined as a matter of law, which appellate courts review de novo." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010). "When, as here, a trial court does not issue findings of fact or conclusions of law to support its special-appearance determination, we presume that all factual disputes were resolved in favor of the trial court's ruling." *Id*. at 871–72.

The exercise of personal jurisdiction over a nonresident defendant by a Texas court comports with federal due process limitations when: (1) the defendant has established minimum contacts with Texas; and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id*. at 872. A defendant's contacts with Texas can give rise to either specific or general jurisdiction. *Id*. "General jurisdiction exists when a defendant's contacts are continuous and systematic, even if the cause of action does not arise from activities performed in" Texas. *Id*. "Specific jurisdiction is appropriate when (1) the defendant's contacts with [Texas] are purposeful, and (2) the cause of action arises from or relates to the defendant's contacts." *Id*. at 873. In a specific jurisdiction analysis, we focus on the relationship among the defendant, Texas, and the litigation. *Id*. at 873.

Three issues are considered "in determining whether a defendant purposefully availed itself of the privilege of conducting activities in Texas." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009). "First, only the defendants contacts with [Texas] are relevant, not the unilateral activity of another party or a third person." *Id*. at 339 (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007)). "Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated." *Id*.

"Thus, sellers who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to the jurisdiction of the latter in suits based on their activities." *Id.* "Finally, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction." *Id.*

### SPECIAL APPEARANCE BURDENS AND PROCEDURE

"[T]he plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction." *Kelly v. General Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). "[T]he plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Id.* "Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff." *Id.* The defendant can factually negate jurisdiction by presenting evidence "that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id.* at 659. "The plaintiff can then respond with its own evidence that affirms its allegations." *Id.*

### SPECIFIC JURISDICTION

Accelerated Wealth asserts that the live pleading at the time of the hearing on the special appearance was Lead Generation's original petition, which alleged only general jurisdiction. Accelerated Wealth contends the trial court should not have considered Lead Generation's amended petition which was filed after the hearing on the special appearances and which alleged additional jurisdictional facts. Accelerated Wealth also contends the trial court should not have considered evidence of contacts that arose after the date Lead Generation's original petition was filed.

A.      Response and Specific Jurisdiction Allegations

Although Accelerated Wealth takes issue with the trial court's consideration of additional jurisdictional allegations contained in Lead Generation's amended petition, Accelerated Wealth fails to address that these additional jurisdictional allegations also are contained in Lead Generation's response to Accelerated Wealth's special appearance.  The trial court may properly consider additional allegations contained in a response to a special appearance.[1]  *See, e.g., Alliance Royalties, LLC v. Boothe*, 329 S.W.3d 117, 120–21 (Tex. App.—Dallas 2010, no pet.); *Ennis v. Loiseau*, 164 S.W.3d 698, 705 (Tex. App.—Austin 2005, no pet),

With regard to specific jurisdiction, Lead Generation alleged in its response that its claims against Accelerated Wealth included tortious interference with contracts, misappropriation of trade secrets, and civil conspiracy.  Lead Generation further alleged that: (1) it is engaged in the business of licensing confidential and proprietary business leads related to the real estate investment seminar business; and (2) its causes of action against Accelerated Wealth stem from the unauthorized acquisition and use of Lead Generation's proprietary business information for Accelerated Wealth's own benefit in connection with the real estate investment seminar business.  Finally, Lead Generation alleged that Accelerated Wealth's wrongful acts giving rise to the causes of action include wrongful acts committed in the State of Texas.  We construe these allegations as an assertion that the trial court had specific jurisdiction over Accelerated Wealth since Lead Generation alleges that Accelerated Wealth's liability arises out of wrongful acts committed in the State of Texas.  *See Spir Star AG*, 310 S.W.3d at 873.

---

[1] We note that because the amended petition contained the same allegations asserted in the response, which the trial court could properly consider, leave of court to file the amended petition likely can be presumed since Accelerated Wealth could not have demonstrated any surprise or prejudice in view of the allegations in the response. *See Nichols v. Bridges*, 163 S.W.3d 776, 782–83 (Tex. App.—Texarkana 2005, no pet.). Because our analysis focuses on the allegations contained in the original petition and response, we need not rely on the trial court's consideration of the amended petition; therefore, we need not definitely resolve whether the trial court could have considered the amended petition. *See* TEX. R. APP. P. 47.1 (opinion need address only those issues necessary to final disposition of the appeal).

Because the trial court could properly consider the allegations contained in Lead Generation's response, *see Alliance Royalties, LLC*, 329 S.W.3d at 120; *Ennis*, 164 S.W.3d at 705, we reject Accelerated Wealth's contention that only general jurisdiction was alleged.

Putting Lead Generation's specific jurisdiction allegations in the factual context alleged in Lead Generation's original petition and response, Lead Generation licensed its leads to an affiliate, Performance Advantage Group, Inc. ("PAG"), which used the leads to explore business opportunities in the real estate industry. PAG employed Tobey Waggoner, Dallas Tall, and several additional individual defendants, who also were sued by Lead Generation, in sales positions, and each employee signed an employment agreement containing a confidentiality provision recognizing the confidentiality of the leads licensed to PAG by Lead Generation. While still employed by PAG, Waggoner and Tall formed Accelerated Wealth which was formed to conduct business in competition with PAG. While employed in Texas by PAG, Waggoner and Tall's duties as employees of PAG overlapped their formation of and actions taken on behalf of Accelerated Wealth, and Waggoner and Tall had significant contacts with the State of Texas during this time. Waggoner and Tall then recruited other PAG employees located in Texas, including the additional named individual defendants, to become employees of Accelerated Wealth, thereby interfering with the employment agreements between PAG and these individuals. Finally, Accelerated Wealth, Waggoner, Tall, and the other named individual defendants, who were former employees of PAG, used Lead Generation's leads which were licensed to PAG to benefit Accelerated Wealth's business.

Because we hold that the original petition and response contained sufficient allegations of specific jurisdiction, the burden shifted to Accelerated Wealth to negate jurisdiction based on the above-detailed allegations. *Kelly*, 301 S.W.3d at 658. In order to do so, Accelerated Wealth was required to present evidence to effectively disprove the allegations. *Id*. at 659. Accelerated

Wealth, however, only presented evidence addressing general jurisdiction, not the foregoing allegations pertaining to specific jurisdiction. Therefore, Accelerated Wealth failed to satisfy its burden, and the trial court did not err in denying the special appearance. *See id*.

      B.      Evidence of Post-Petition Contacts

Relying on *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163 (Tex. 2007), Accelerated Wealth argues that the trial court could not consider the evidence Lead Generation presented of post-petition contacts Accelerated Wealth had with Texas. Given that Lead Generation alleged Accelerated Wealth's contacts with Texas gave rise to specific jurisdiction, Accelerated Wealth's reliance on *PHC-Minden, L.P.* is misplaced. In that case, the Texas Supreme Court concluded that the relevant "period for assessing contacts for purposes of ***general*** jurisdiction" "ends at the time suit is filed." 235 S.W.3d at 169 (emphasis added). The court explained, "As noted above, general jurisdiction is dispute-blind; accordingly, ***and in contrast to specific jurisdiction***, the incident made the basis of the suit should not be the focus in assessing continuous and systematic contacts." *Id*. (emphasis added). At least one Texas court appears to have recognized the distinction between consideration of post-petition contacts in a general jurisdiction analysis as opposed to a specific jurisdiction analysis, noting, "When ***general*** jurisdiction is at issue only the defendant's pre-suit contacts are relevant." *Specht v. Dunavant*, 362 S.W.3d 752, 755 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (emphasis added).

Limiting a general jurisdiction inquiry to pre-suit contacts is consistent with the analysis to be performed which takes into consideration whether the nonresident contacts are sufficiently continuous and systematic before a suit is filed to permit the nonresident defendant to be hailed into a Texas court to answer the suit. In contrast, specific jurisdiction considers whether a substantial connection exists between the defendant's purposeful contacts with Texas and the operative facts of the litigation. *Specht*, 362 S.W.3d at 755. The operative facts of the litigation

are not isolated to the events occurring pre-petition, especially in the context of the misappropriation of trade secrets where the wrongful acts of misappropriation can be on-going. *See Educational Testing Serv. v. Katzman*, 631 F. Supp. 550, 556 (D. N.J. 1986) ("To permit the filing of a complaint to limit jurisdiction by immunizing a defendant's future actions in the forum state when those actions are a mere continuation of those underlying the complaint would make no sense.").

This case provides a good example of the on-going nature of the operative facts of the litigation. In this case, evidence was presented that Accelerated Wealth allegedly used Lead Generation's leads to locate a sufficient audience for at least six real estate investment seminars and one real estate workshop that Accelerated Wealth conducted in Texas in the two months after Lead Generation's original petition was filed. Although these seminars occurred post-petition, they are operative facts of the litigation which a specific jurisdiction analysis is permitted to consider. Because we previously concluded that Accelerated Wealth failed to meet its initial burden to present evidence to disprove the specific jurisdiction allegations, however, we do not need to consider the evidence of Accelerated Wealth's post-petition contacts. Therefore, we need not definitely resolve whether evidence of post-petition contacts can be considered when specific jurisdiction is at issue. *See* TEX. R. APP. P. 47.1.

### FAIR PLAY AND SUBSTANTIAL JUSTICE

Because Accelerated Wealth failed to meet its burden to disprove that it has sufficient minimum contacts with Texas to support specific jurisdiction, we must determine whether an assertion of jurisdiction over Accelerated Wealth comports with traditional notions of fair play and substantial justice. *Retamco Operating, Inc.*, 278 S.W.3d at 341. Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Id.*

"Nonetheless, we still consider: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and efficient relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies." *Id.* "To defeat jurisdiction, [Accelerated Wealth] must present a compelling case that the presence of some consideration would render jurisdiction unreasonable—something [Accelerated Wealth] has not done" since it did not even address this prong of our analysis in its brief. *Spir Star AG*, 310 S.W.3d at 878–79 (internal citations omitted).

Lead Generation "has an interest in resolving this controversy in Texas because that is where the litigation began." *Retamco Operating, Inc.*, 278 S.W.3d at 341. Requiring Accelerated Wealth to defend Lead Generation's claim in Texas "would not pose an undue burden for the company" as Texas "is familiar territory for [Accelerated Wealth's] leadership," especially given that Waggoner and Tall's employment with PAG and the formation of Accelerated Wealth overlapped. *Spir Star AG*, 310 S.W.3d at 879. "Moreover, Texas has a significant interest in exercising jurisdiction over controversies arising from injuries a Texas resident [entity] sustains" when employees previously employed in Texas by the Texas entity use confidential information or misappropriate trade secrets in connection with the formation of a competing entity. *See id.* Accordingly, asserting personal jurisdiction over Accelerated Wealth comports with traditional notions of fair play and substantial justice.

#### CONCLUSION

The trial court's order is affirmed.

Sandee Bryan Marion, Justice