In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00020-CV
______________________________


DON NICHOLS, INDIVIDUALLY, AND D/B/A
NICHOLS MARINE OF MCALESTER, OKLAHOMA, Appellant
 
V.
 
JAMES BRIDGES, Appellee


                                              

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2003-1802-CCL2


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            Don Nichols, individually, and d/b/a Nichols Marine of McAlester, Oklahoma (hereinafter
referred to as Don), appeals an order denying a special appearance claim challenging the personal
jurisdiction in Texas. We find that there is no evidence to support the finding and reverse the
judgment of the trial court. 
Facts and Procedural History 
            Don Nichols, a resident of Oklahoma, established a boat dealership in McAlester, Oklahoma,
in 1972. Don's son, Gary Nichols, established Nichols Marine of Texas, L.L.C., and Marine
Holdings Corporation. Don has never had any ownership interest in Nichols Marine of Texas,
L.L.C., or Marine Holdings Corporation. It is alleged that Nichols Marine of Texas, L.L.C., entered
into an employment agreement with James Bridges and that Bridges was wrongfully terminated by
Nichols Marine of Texas, L.L.C. Bridges further alleged that he and Gary Nichols entered into a
business plan agreement whereby Gary Nichols would arrange for the necessary funding for all
company acquisitions and operations. Nichols Marine of Texas, L.L.C., was dissolved, and Gary
Nichols then incorporated Nichols Marine of Longview, L.L.C. Bridges sued Gary Nichols, Nichols
Marine of Longview, L.L.C., Marine Holdings Corporation, Don Nichols, individually, and d/b/a
Nichols Marine of McAlester, Oklahoma. Don filed a special appearance alleging the trial court did
not have jurisdiction over him. After a hearing, the trial court denied the motion, which denial is
being appealed. 
            Gary's corporation was structured to allow a transfer of boats from Oklahoma to Texas
regardless of which company was obligated for the floor plan financing. Don was allowed to
participate with Gary's corporation as a buying group through Marine Holdings Corporation, which
allowed Don to obtain discounts or rebates from the manufacturers. Don was aware that the group
purchasing and the floor plan financing allowed the Longview store to acquire inventory. Don's
company received rebates from boat manufacturers during the time that Gary and Bridges were
involved in the Longview store. The rebates were to be received by Marine Holdings Corporation
and then disbursed to the respective stores, including the Longview store. 
            Don challenges the legal and factual sufficiency of the implied findings of fact to support the
judgment.
Standard of Review
            The Texas Supreme Court has spoken extensively on the jurisdiction of Texas courts over
a nonresident defendant. See Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 805–07
(Tex. 2002). Texas courts may assert personal jurisdiction over a nonresident only if the Texas long-arm statute authorizes jurisdiction and the exercise of jurisdiction is consistent with federal and state
due process standards. Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C., 815
S.W.2d 223, 226 (Tex. 1991). The Texas long-arm statute reaches "as far as the federal
constitutional requirements of due process will allow." Id. Thus, the Texas long-arm statute
requirements are satisfied if exercising jurisdiction comports with federal due process limitations. 
Id. The Texas statute specifies that the following actions by a nonresident may constitute "doing
business" in Texas: (1) contracting by mail or otherwise with a Texas resident and either party is
to perform the contract in whole or in part in this state, (2) committing a tort in whole or in part in
this state, or (3) recruiting Texas residents, directly or through an intermediary located in this state
for employment inside or outside this state. See Tex. Civ. Prac. & Rem. Code Ann. § 17.042
(Vernon 1997).
            Under the Due Process Clause of the Fourteenth Amendment, jurisdiction is proper if a
nonresident defendant established "minimum contacts" with Texas and maintenance of the suit does
not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326
U.S. 310, 316 (1945). The purpose of the minimum-contacts analysis is to protect the defendant
from being haled into court when its relationship with Texas is too attenuated to support jurisdiction. 
Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990). Accordingly, we focus on the defendant's
activities and expectations in deciding whether it is proper to call it before a Texas court. Id.
            The minimum-contacts analysis requires that a defendant "purposefully avail" itself of the
privilege of conducting activities within Texas, thus invoking the benefits and protections of our
laws. Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). The defendant's activities, whether
they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the
defendant could reasonably anticipate being called into a Texas court. World-Wide Volkswagen
Corp. v. Woodson, 444 U.S. 286, 297 (1980). A defendant is not subject to jurisdiction here if its
Texas contacts are random, fortuitous, or attenuated. See Guardian Royal Exch. Assur., Ltd., 815
S.W.2d at 226. Nor can a defendant be haled into a Texas court for the unilateral acts of a third
party. Id. It is the quality and nature of the defendant's contacts, rather than their number, that is
important to the minimum-contacts analysis. Id. at 230 n.11.
            A defendant's contacts with a forum can give rise to either specific or general jurisdiction. 
For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be
met: (1) the defendant's contacts with the forum must be purposeful, and (2) the cause of action must
arise from or relate to those contacts. Id. at 227. General jurisdiction, on the other hand, allows a
forum to exercise jurisdiction over a defendant even if the cause of action did not arise from or relate
to a defendant's contacts with the forum. Id. at 228. General jurisdiction is present when a
defendant's contacts with a forum are "continuous and systematic," a more demanding minimum-contacts analysis than specific jurisdiction. Id.
            The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident
defendant within the provisions of the long-arm statute. McKanna v. Edgar, 388 S.W.2d 927, 930
(Tex. 1965). But upon filing a special appearance, the nonresident defendant assumes the burden
to negate all the bases of personal jurisdiction alleged by the plaintiff. Kawasaki Steel Corp. v.
Middleton, 699 S.W.2d 199, 203 (Tex. 1985).
            Whether a court has personal jurisdiction over a defendant is a question of law. Coleman,
83 S.W.3d at 805–06 (citing BMC Software v. Marchard, 83 S.W.3d 789 (Tex. 2002)).
            But in resolving a question of law, a trial court must frequently resolve questions of fact. 
Coleman, 83 S.W.3d at 805–06 (citing Marchard, 83 S.W.3d at 794). On appeal, the trial court's
determination to grant or deny a special appearance is subject to a de novo review, but appellate
courts may be called on to review the trial court's resolution of a factual dispute. Id. When the trial
court does not issue findings of fact, reviewing courts should presume the trial court resolved all
factual disputes in favor of its judgment. Coleman, 83 S.W.3d at 805–06 (citing Marchard, 83
S.W.3d at 795). 
            Here, the trial court denied the special appearance motion, but did not issue findings of fact. 
Therefore, we presume the trial court resolved all factual disputes in favor of its judgment. If there
is more than a scintilla of evidence to support the implied findings, the no-evidence or legal
sufficiency challenge fails. Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 84 (Tex. 1992). An
appellate court may reverse a decision of the trial court for factual sufficiency if, after reviewing all
of the evidence, the disputed factual determination is so against the great weight and preponderance
of the evidence as to be manifestly erroneous or unjust. Cartlidge v. Hernandez, 9 S.W.3d 341, 346
(Tex. App.—Houston [14th Dist.] 1999, no pet.). 
Consideration of the Second Amended Original Petition
            The trial court conducted a hearing on this special appearance plea November 1, 2004. At
that time, the live pleading of Bridges was the first amended original petition. After the hearing was
concluded, the judge announced that he would take the matter under advisement after having an
opportunity to "review everything else." On November 3, 2004, Bridges filed his second amended
original petition, which expanded some of the allegations previously made. There is no evidence
that the pleading was filed with the express permission of the trial court. 
            Rule 63 of the Texas Rules of Civil Procedure provides: 
Parties may amend their pleadings, . . . provided, that any pleadings,
responses or pleas offered for filing within seven days of the date of trial or
thereafter, . . . shall be filed only after leave of the judge is obtained, which leave
shall be granted by the judge unless there is a showing that such filing will operate
as a surprise to the opposite party.

Tex. R. Civ. P. 63 (emphasis added). Accordingly, pleading amendments sought within seven days
of the time of trial are to be granted unless there has been a showing of surprise to the opposite party. 
Rogers v. Gonzales, 654 S.W.2d 509, 515 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.).
            A liberal interpretation has been given to Rule 63. Texas courts have held that, in the
absence of a sufficient showing of surprise by the opposing party, the failure to obtain leave of court
when filing a late pleading may be cured by the trial court's action in considering the amended
pleading. Lloyd's of London v. Walker, 716 S.W.2d 99, 103 (Tex. App.—Dallas 1986, writ ref'd
n.r.e.); West v. Touchstone, 620 S.W.2d 687, 689 n.2 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.);
Swinney v. Winters, 532 S.W.2d 396, 400 (Tex. Civ. App.—San Antonio 1975, writ ref'd n.r.e.);
Lucas v. Hayter, 376 S.W.2d 790 (Tex. Civ. App.—San Antonio 1964, writ dism'd).
            The language of Rule 63 allows an amendment to a pleading within seven days of the "date
of trial." No cases have been found determining that a special appearance plea hearing is a "date of
trial" as envisioned by Rule 63. However, a special appearance is similar to a summary judgment
in that each may lead to a final disposition of the case. Summary judgment proceedings have been
held to be a trial within the meaning of Rule 63. See Jones v. Houston Materials Co., 477 S.W.2d
694, 695 (Tex. Civ. App.—Houston [14th Dist.] 1972, no writ); Leche v. Stautz, 386 S.W.2d 872
(Tex. Civ. App.—Austin 1965, writ ref'd n.r.e.). We will construe the special appearance hearing
as requiring the trial court's approval in order to consider amended pleadings filed within seven days
of the hearing date or thereafter. 
            Here, the trial court heard the oral presentation of the motion November 1, 2004. On
November 3, 2004, the second amended original petition was filed, and the court ruled on the motion
by an order filed November 23, 2004. The amended pleadings added more definite allegations
concerning Don, but none of the pleadings have been shown to be a surprise to Don. The allegations
in the first and second amended pleadings both alleged a conspiracy between the defendants to
terminate the business of Nichols Marine of Texas, L.L.C., and a failure to fund the Longview
operation to allow it to comply with the agreement with Bridges. The second amended original
petition stated more specifically that Don received rebates attributable to Nichols Marine of Texas,
L.L.C., and failed to properly remit the rebates to Nichols Marine of Texas, L.L.C. The "rebate"
allegation was discussed during the deposition of Don, which is before this Court, and therefore
should not have come as a surprise. Finally, there is no indication the trial court did not consider this
allegation since several weeks transpired before the trial court filed its order and after the trial judge
stated that he would "review everything else." When the record is silent of any basis to conclude that
the amended pleading was not considered by the trial court and when no surprise or prejudice is
shown, leave of court is presumed. Goswami v. Metro. Sav. & Loan Ass'n, 751 S.W.2d 487, 490
(Tex. 1988). We will consider the second amended original petition. 
Specific Jurisdiction
            Bridges' suit alleges Don (1) conspired with the other defendants to deprive Nichols Marine
of Texas, L.L.C., from necessary funding required under the business agreement between Bridges
and Gary Nichols, (2) failed to provide adequate floor plan financing to allow Nichols Marine of
Texas, L.L.C., to acquire sufficient inventory and diverted such financing to other boat dealerships
owned by the Nichols, and (3) failed to pay rebates to Nichols Marine of Texas, L.L.C., received by
Don Nichols in the amount of $70,000.00, breaching a fiduciary duty. In an affidavit, Don denies
all the allegations. It is alleged that these actions rendered Nichols Marine of Texas, L.L.C., on such
an unsound financial basis that it was not able to comply with the contract entered into with Bridges. 
The only evidence on these issues comes from the affidavit and deposition of Don.
            We will examine whether Don negated all bases of jurisdiction as alleged by Bridges. When
reaching a decision to exercise or decline jurisdiction based on the defendant's alleged commission
of a tort, the trial court should examine only the necessary jurisdictional facts and should not reach
the merits of the case. Arterbury v. Am. Bank & Trust Co., 553 S.W.2d 943, 948 (Tex. Civ.
App.—Texarkana 1977, no writ). Specific jurisdiction over a tort defendant is satisfied when "the
defendant, personally or through an agent, is the author of an act or omission within the forum state,
and the petition states a cause of action in tort arising from such conduct." Baldwin v. Household
Int'l, Inc., 36 S.W.3d 273, 277 (Tex. App.—Houston [14th Dist.] 2001 no pet.). But where the
movant in a special appearance motion establishes the nonexistence of an act or omission on which
jurisdiction rests, he or she has destroyed the basis for the power of the Texas court to determine the
issue of liability. The fact that the showing of an absence of the factual basis for exercise of
jurisdiction also tends to show the absence of liability is irrelevant. Ross F. Meriwether & Assocs.
v. Aulbach, 686 S.W.2d 730, 732 (Tex. App.—San Antonio 1985, no writ).
            Here, it is not alleged that Don committed any act in the State of Texas. Rather, it is alleged
that Don's actions affected the viability of the now-dissolved corporation, Nichols Marine of Texas,
L.L.C. Essentially, the allegation is that Don "controlled" the availability of floor plan financing for
the Texas business, and his denial of financing and diversion of financing to other stores prevented
the Texas store from obtaining inventory, which in turn caused the Texas company to be unable to
comply with its contractual obligation to Bridges for his continued employment. In his affidavit,
Don denies he has committed any act or omission to conspire with another to make it impossible for
anyone to comply with the contract to which Bridges was a party. Don's affidavit states he was never
asked to and never agreed to provide any funding for acquisitions or operation of Nichols Marine
of Texas, L.L.C. Don admits he personally guaranteed the floor plan financing for both the
Oklahoma and Texas stores to the financial institutions, which allowed the transfer of boats from
Oklahoma to Texas regardless of which store was responsible. However, there is no evidence from
any source that Don "controlled" the inventory or the financing for Nichols Marine of Texas, L.L.C.,
or that he violated any such personal guarantees. Don received some rebates from manufacturers,
including some reflecting sales from the Longview store. The rebates first came to Don and then
were disbursed to the holding corporation, which would distribute the money to the proper place,
including the Longview store. It is Bridges' allegation that rebates were improperly diverted from
the Longview store, which made it financially unable to comply with the contract with Bridges.
            It is true that a state may exercise jurisdiction based on the effects of a nonresident's actions
even if the conduct was committed elsewhere when the actor knew he would cause damage in
another state. See Calder v. Jones, 465 U.S. 783, 790 (1984). In dicta, the Texas Supreme Court
has stated that "a nonresident need not be physically present in the state. Due process is satisfied if
the defendant's activities outside the state have reasonably foreseeable consequences in the forum." 
Siskind v. Villa Found. for Educ., Inc., 642 S.W.2d 434, 438 n.5 (Tex. 1982) (citing Prod.
Promotions, Inc. v. Cousteau, 495 F.2d 483, 496 (5th Cir. 1974)); see Gen. Elec. Co. v. Brown &
Ross Int’l Distribs., Inc., 804 S.W.2d 527, 533 (Tex. App.—Houston [1st Dist.] 1990, writ denied). 
The "effects" test, though, requires that the conduct be purposefully directed at the forum. See D.H.
Blair Inv. Banking Corp. v. Reardon, 97 S.W.3d 269, 275 (Tex. App.—Houston [14th Dist.] 2002,
pet. dism'd w.o.j.) (mere knowledge not sufficient to be purposeful). Here, the strongest case to be
made is that Don failed to pay certain rebates to Nichols Marine of Texas, L.L.C. In turn, Nichols
Marine of Texas, L.L.C., became financially insolvent and therefore could not honor Bridges'
contract. We believe such consequences are too remote and attenuated, and are not reasonably
foreseeable. Don had no contractual or fiduciary relationship to Bridges. The argument that Don
violated some duty owed to Nichols Marine of Texas, L.L.C., which resulted in Nichols Marine of
Texas defaulting on its contract to Bridges logically could be made on behalf of any creditor of
Nichols Marine of Texas, L.L.C. (that Don failed to pay Nichols Marine of Texas so it could not pay
its suppliers, vendors, rent or land payments, employees, etc., and therefore Don may be sued in
Texas for any such debt). Assuming it is true that Don failed to pay some rebates owed to Nichols
Marine of Texas, L.L.C., such fact does not establish that Bridges' cause of action arises from or is
connected to such act. We hold that a Texas court may not assert specific personal jurisdiction over
Don. See Reardon, 97 S.W.3d at 275. 
General Jurisdiction
            It is clear that the actions of Don did not give rise to general jurisdiction by the Texas courts
over them. General jurisdiction is present when a defendant's contacts are continuous and
systematic, permitting the forum to exercise personal jurisdiction over the defendant even if the
cause of action did not arise from or relate to activities conducted within the forum, a more
demanding minimum-contacts analysis than for specific jurisdiction. CSR Ltd. v. Link, 925 S.W.2d
591, 595 (Tex. 1996). There is no evidence that Don conducted systematic and continuous activities
giving rise to general jurisdiction. 
            We conclude Don Nichols, individually, and d/b/a Nichols Marine of McAlester, Oklahoma,
did not have sufficient minimum contacts with the State of Texas to support an assertion of personal
jurisdiction. We reverse the trial court's order denying the special appearance and render judgment
dismissing Bridges' claims against Don Nichols, individually, and d/b/a Nichols Marine of
McAlester, Oklahoma. 
 
 
                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          March 15, 2005
Date Decided:             April 27, 2005