

NUMBER 13-12-00631-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CHRISTUS SPOHN HOSPITAL
SYSTEM CORPORATION D/B/A
CHRISTUS SPOHNHOSPITAL
CORPUS CHRISTI-MEMORIAL,                          Appellant,

v.

LAWRENCE CANARELLI,                          Appellee.

On appeal from the 117th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Longoria

By two issues, appellant, Christus Spohn Health System Corporation, appeals the trial court's order granting the special appearance of appellee, Lawrence Canarelli. We affirm.

## I. BACKGROUND

Appellee is a resident of Las Vegas, Nevada. Appellee travelled to Texas "two or three" times in the early 1990s to visit his son who was attending Southern Methodist University in Dallas. "[O]ther than changing planes" at the airport, appellee has not otherwise travelled to Texas.

Beginning in 2000, appellee owned a 75% interest in two entities, Corpus Christi Day Cruise, LLC ("CCDC") and Day Cruises Maritime, LLC ("DCM"). CCDC is a Nevada limited liability company. DCM is a Republic of the Marshall Islands limited liability company. CCDC and DCM own and operate a casino vessel known as the Texas Treasure. The Texas Treasure is based in Corpus Christi and Port Aransas, Texas.

On or about August 21, 2002, while in the employment of the Texas Treasure, Judy A. Lanado was taken ashore for medical treatment. Part of that medical treatment included hospital services provided by appellant. On December 31, 2002, the Lanado family brought a healthcare liability claim against appellant. The parties settled the claim. As part of the settlement, appellant was assigned Lanado's right to recover medical expenses from her employer, Texas Treasure.

In November 2003, CCDC and DCM intervened in the Lanado suit. On December 11, 2003, appellant asserted a counterclaim against CCDC and DCM to recover the reasonable and necessary medical expenses incurred for the care and

treatment of Lanado based on the assignment by Lanado. In 2010, the case proceeded to a jury trial, resulting in a verdict in favor of appellant. On July 5, 2012, this Court affirmed a judgment entered against CCDC and DCM in the amount of approximately $1.6 million. *See Corpus Christi Day Cruise, LLC v. Christus Spohn Health System Corp.*, No. 13-11-00117-CV, 2012 Tex. App. LEXIS 5343 (Tex. App.—Corpus Christi July 5, 2012, pet. denied) (mem. op.).

On October 4, 2010, appellant commenced the instant suit against CCDC, DCM, Corey Adcock, Patrick Beam, and appellee. Appellant alleged that Adcock is the "sole or controlling member" and "sole manager or director" of CCDC and DCM. Appellant alleged that Beam is the general counsel for CCDC and DCM. Appellant alleged that Beam and appellee "owned or currently own a minority interest" in CCDC and DCM. Appellant alleged that CCDC and DCM were the alter egos for Adcock, Beam, and appellee. Appellant alleged a claim against all defendants under the Uniform Fraudulent Transfer Act ("UFTA"). *See* Tex. Bus. & Com. Code Ann. §§ 24.001–.013 (West 2009). Appellant alleged that after it filed its counterclaim against CCDC and DCM in 2003, the defendants "transferred millions of dollars out of [CCDC and DCM] . . . in an effort to hinder, delay, or defraud [appellant] as a creditor shortly after a known obligation became due."

Appellant alleged that appellee is not a resident of Texas. Appellant did not allege any facts to establish personal jurisdiction over appellee. Appellee filed a special appearance with an affidavit attached. *See* Tex. R. Civ. P. 120a. Appellee argued that because appellant failed to plead jurisdictional facts, appellee met his burden of

3

negating personal jurisdiction by providing the trial court with his affidavit stating that he is not a resident of Texas.

Thereafter, appellant filed its first amended original petition, alleging facts to establish personal jurisdiction over appellee: (1) appellee committed tortious misconduct in whole or in part in Texas; (2) appellee's tortious conduct was purposefully directed toward Texas; and (3) appellee has continuous and systematic contacts with Texas. The parties entered into a Rule 11 agreement whereby they agreed to engage in written discovery and a deposition of appellee on the issue of personal jurisdiction only. *See* Tex. R. Civ. P. 11. Appellant served 145 document requests on appellee and then noticed his deposition to take place in Las Vegas, Nevada, with an additional 15 document requests. After taking appellee's deposition, appellant served another 36 document requests on appellee.

On May 2, 2012, appellant filed a response to appellee's special appearance, arguing that the burden was now on appellee to negate the grounds for jurisdiction alleged in its first amended original petition. On May 3, 2012, appellee filed his reply, addressing the grounds for jurisdiction alleged in appellant's first amended original petition. Appellee submitted his affidavit and deposition testimony in support of his reply. Appellee argued that his evidence established the following:

(1) [appellee] never made any (let alone "numerous") visits to Corpus Christi, Texas to visit the Texas Treasure;

(2) [appellee] never met with other owners and potential owners of the Texas Treasure in Texas;

(3) [appellee] never met with vendors of the Texas Treasure;

(4) [appellee] never interviewed or hired prospective employees of the Texas Treasure;

4

(5) [appellee] never conducted the general business of the Texas Treasure;

(6) [appellee] did not purchase his ownership interest in the Texas Treasure in the State of Texas;

(7) [appellee] did not sign his ownership agreement in the State of Texas;

(8) [appellee] did not receive any income derived from the business conducted by the Texas Treasure in the State of Texas;

(9) [appellee] did not travel to the State of Texas on numerous occasions for personal and business activities;

(10)   [appellee] did not repeatedly make telephone calls to Texas residents;

(11)   [appellee] did not send or receive correspondence from Texas residents and Texas entities;

(12)   [appellee] did not transfer any assets of the Texas Treasure; and

(13)   [appellee] did not receive any assets of the Texas Treasure.

Appellee testified that his only involvement in the Texas Treasure was "investing money." Appellee also testified that he abandoned his ownership interests in CCDC and DCM effective December 31, 2004 and that he did not receive any financial remuneration for abandoning his interests. Appellant maintains that appellee abandoned his ownership interests effective December 31, 2005. Appellant also maintains that appellee received financial remuneration for abandoning his interests.

On May 7, 2012, the trial court held a hearing on appellee's special appearance. The trial court did not hear evidence, but it stated that it had read appellee's deposition testimony. The trial court also stated that it was "inclined to think that there [are] not sufficient minimum contacts." The trial court also stated that it was "inclined to grant the

5

special appearance, unless there is something special in [appellee's] tax returns." The trial court stated that it was "going to carry the special appearance ruling."

On July 18, 2012, appellee produced for the trial court's in camera inspection complete copies of his federal and state income tax returns for 2004–2006 and his personal financial statements for the same years. Appellee also provided the trial court with copies of his supplemental production, which included the formation documents for CCDC and DCM that arguably demonstrate that appellee had the ability to appoint managers but not the ability to run day-to-day operations.

Subsequently, appellant served an additional 179 document requests on appellee. On August 1, 2012, appellant filed its second amended original petition, alleging that appellee "purposefully availed himself of the privileges and benefits of conducting business in [Texas] . . . by creating, forming and investing over $30 million dollars in an enterprise of several entities which do or did business primarily, if not exclusively, in Texas." Appellant alleged that appellee maintained "all of the management rights and voting power attendant with his majority ownership interest in [CCDC and DCM]." Appellant also alleged that appellee "also received income or other financial benefits, including tax benefits, derived from the business conducted by [CCDC and DCM] in Texas." Appellant filed two motions to compel discovery responses.

On August 27, 2012, appellee filed his supplemental reply in support of his special appearance. On August 30, 2012, appellant served appellee with disclosures of expert witnesses it intended to call as witnesses at the hearing on appellee's special appearance. Appellant filed a motion for continuance of the hearing.

On August 31, 2012, the trial court conducted a second hearing on appellee's special appearance. The trial court denied appellant's motion for continuance, struck appellant's experts as untimely designated, and heard the special appearance. The trial court indicated that it took into consideration expert testimony from a separate hearing held on August 13, 2012 on a discovery dispute and the affidavits filed by the parties. The trial court stated that it was granting the special appearance because there was no general or specific jurisdiction.

Notwithstanding this ruling, the trial court allowed appellant to submit expert affidavits within seven days of the hearing and appellee to submit any responsive expert affidavits within seven days thereafter. On September 7, 2012, appellant filed and served the affidavit of Donald M. Clanton and the affidavit of Randall Lemer. In response, on September 14, 2012, appellee submitted the affidavit of Robert Evans and the affidavit of Gary Lambrix.

On September 25, 2012, the trial court convened a telephonic hearing to re-address the special appearance and a number of outstanding motions. The trial court confirmed its ruling of August 31, 2012, granting appellee's special appearance and dismissing the claims against appellee with prejudice. On September 26, 2012, the trial court entered an order granting appellee's special appearance and dismissing the claims against him. This interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West Supp. 2011).

## II. ANALYSIS

In its first issue, appellant argues that the trial court erred in ruling that Texas courts lack specific jurisdiction over appellee. In its second issue, appellant argues that

7

the trial court erred in ruling that exercising personal jurisdiction over appellee would not comport with fundamental notions of fair play and justice.

## A.  Applicable Law

A Texas court may exercise personal jurisdiction over a nonresident defendant only if jurisdiction is authorized by the Texas long-arm statute.  *See id.* § 17.042 (West 2008).  The Texas "long-arm statute," which permits Texas courts to exercise personal jurisdiction over nonresident defendants who do business in Texas, provides as follows:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
>
> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
>
> (2) commits a tort in whole or in part in this state; or
>
> (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

*Id.*  "[T]he Texas long-arm statute's broad doing-business language allows the statute to reach as far as the federal constitutional requirements of due process will allow." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). "Therefore, we only analyze whether [appellee's] acts would bring [appellee] within Texas' jurisdiction consistent with constitutional due process requirements."  *Id.*

"Under constitutional due-process analysis, personal jurisdiction is achieved when (1) the non-resident defendant has established minimum contacts with the forum state, and (2) the assertion of jurisdiction complies with traditional notions of fair play and substantial justice."  *Id.* at 338.  "We focus on the defendant's activities and expectations when deciding whether it is proper to call the defendant before a Texas court."  *Id.*

"A defendant establishes minimum contacts with a state when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Id.* A nonresident defendant's contacts with the forum state may create either specific or general jurisdiction. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575, 575 (Tex. 2007). "General jurisdiction arises when the defendant's contacts with the forum are continuous and systematic." *Retamco*, 278 S.W.3d at 338. "Specific jurisdiction exists if the nonresident defendant purposefully directed his activities at a resident of Texas and the litigation arose from or related to those contacts." *San Pedro Impulsora De Inmuebles Especiales, S.A. De C.V. v. Villarreal*, 330 S.W.3d 27, 38 (Tex. App.— Corpus Christi 2010, no pet.). "In other words, there must be a substantial connection between the nonresident defendant's contacts and the operative facts of the litigation." *Id.*

"Specific jurisdiction, which is alleged here, arises when (1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities." *Retamco*, 278 S.W.3d at 338. "In a specific jurisdiction analysis, we focus on the relationship among the defendant, the forum, and the litigation." *Id.* The Texas Supreme Court has explained that we consider three issues in determining whether a defendant purposefully availed itself of the privilege of conducting activities in Texas:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts

relied upon must be purposeful rather than random, fortuitous, or attenuated. Thus, sellers who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to the jurisdiction of the latter in suits based on their activities. Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Id.* at 338–39. "Additionally, the minimum-contacts analysis is focused on the quality and nature of the defendant's contacts, rather than their number." *Id.* at 339.

"Purposeful availment alone will not support an exercise of specific jurisdiction unless the defendant's liability arises from or relates to the forum contacts." *Id.* at 340. "We look for a substantial connection between the defendant's forum contacts and the operative facts of the litigation." *Id.* "Thus, we must consider the claims involved in the litigation to determine the operative facts." *Id.* Appellant "alleges that [appellee] is the transferee of a fraudulent transfer in violation of the UFTA." *Id.* at 340–41. "The UFTA provides, in part, that '[a] transfer . . . is fraudulent . . . if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor; or without receiving a reasonably equivalent value in exchange for the transfer or obligation.'" *Id.* at 341 (quoting TEX. BUS. & COM. CODE ANN. § 24.005(a)(1)–(a)(2)). "Without an asset, no fraudulent transfer can occur under the UFTA." *Id.* (citing TEX. BUS. & COM. CODE ANN. § 24.002(12)). "Proof that . . . assets were transferred and an assessment of their value will be essential to the UFTA analysis; without that proof, the UFTA claim fails." *Id.*

"Even if minimum contacts are present, a trial court may not exercise personal jurisdiction over a nonresident defendant if it would offend traditional notions of fair play and substantial justice." *Villarreal*, 330 S.W.3d at 38. Whether the court's exercise of personal jurisdiction over a nonresident defendant meets this requirement depends on

10

several factors, including: (1) "the burden on the defendant"; (2) "the interests of the forum state in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) "the interstate or international judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several nations or states in furthering fundamental substantive social policies." *Id.* "Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.*

## B. Special Appearance

"Our special-appearance jurisprudence dictates that the plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction." *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). "[T]he plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Id.* "Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff." *Id.* "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id.*

"If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute (i.e., for a tort claim, that the defendant committed tortious acts in Texas), the defendant need only prove that it does not live in Texas to negate jurisdiction." *Id.* at 658–59. "When the pleading is wholly devoid of jurisdictional facts, the plaintiff should amend the pleading to include the necessary factual allegations, thereby

11

allowing jurisdiction to be decided based on evidence rather than allegations, as it should be." *Id.* at 659 (citation omitted).

The Texas Supreme Court has explained as follows:

The defendant can negate jurisdiction on either a factual or legal basis. Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction.

*Id.*

## C. Standard of Review

"Whether a court can exercise personal jurisdiction over nonresident defendants is a question of law, and thus we review de novo the trial court's determination of a special appearance." *Id.* at 657. "When as here a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied." *Id.* (quotation, citation omitted). "When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court." *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002).

"When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it." *Bryan v. Gordon*, 384 S.W.3d 908, 913 (Tex. App.—Houston

[14th Dist.] 2012, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). "We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not." *Id.* "The evidence is legally sufficient if it would enable a reasonable and fair-minded person to find the fact under review." *Id.* "The fact finder is the sole judge of witness credibility and the weight to give their testimony." *Id.*

"In a factual-sufficiency review, we consider and weigh all the evidence, both supporting and contradicting the finding." *Id.* (citing *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998)). "We set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)). "We may not substitute our own judgment for that of the trier of fact or pass upon the credibility of the witnesses." *Id.* "The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment." *Id.* at 913–14.

## D. Discussion

In support of its first issue, appellant makes four arguments: (1) "specific jurisdiction exists over [appellee] based on [appellant's] pleading that [appellee] committed a tort in whole or in part in Texas"; (2) "the trial court erred in sustaining [appellee's] special appearance based on [appellant's] alleged failure to prove the merits of its claims against [appellant]"; (3) "even assuming Texas law required [appellant] to prove the merits of its claims against [appellee], [appellant] presented sufficient evidence of the merits of its claims against [appellee] to defeat his special appearance"; and (4) appellant's evidence was sufficient to raise a genuine issue of

13

material fact regarding whether CCDC and DCM transferred assets to appellee.  We will address each argument in turn.

First, appellant is correct that its "initial burden [was] to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute."  *Kelly*, 301 S.W.3d at 658.  The parties agree that appellant met this burden by alleging that appellee committed a tort in whole or in part in Texas.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2).  Specifically, appellant alleged that jurisdiction existed based on appellee's conduct in orchestrating and receiving two fraudulent transfers of assets from CCDC and DCM that occurred in whole or in part in Texas.  *See Retamco*, 278 S.W.3d at 341 ("Republic is alleged to have received transfer of Texas real property from a Texas resident, during the pendency of a Texas suit, for the purpose of defrauding a Texas resident . . . .  These contacts are sufficient to demonstrate that this alleged tort occurred at least, in part, in Texas.").  Thus, the burden shifted to appellee to negate all bases for personal jurisdiction alleged by appellant.  *See Kelly*, 301 S.W.3d at 659.

In his special appearance, appellee purported to negate the factual basis and legal basis for jurisdiction.  Appellee purported to negate the factual basis for jurisdiction by producing evidence that he did not have any relevant contacts with Texas.  *Kelly*, 301 S.W.3d at 659.  In addition, appellee presented evidence that he did not receive any transfer of assets from CCDC or DCM, as alleged by appellant.  Appellee also purported to negate the legal basis for jurisdiction on two independent grounds:  (1) his contacts with Texas fall short of purposeful availment; and (2) the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.  *See id.*

14

Appellant argues that appellee did not meet his burden to negate the factual basis for jurisdiction. According to appellant, appellee had the burden to prove that the allegedly tortious conduct "did not occur in whole or in part in Texas." In other words, appellant argues that appellee had the burden to prove that the allegedly tortious conduct "occurred entirely outside of Texas." Appellant argues that appellee failed to meet this burden because he did not present "any evidence that the [alleged] transfers of assets occurred entirely outside of Texas." However, in *Retamco*, the Texas Supreme Court rejected the argument that jurisdiction could be negated by establishing that the allegedly fraudulent transfer "occurred entirely outside of Texas." *Retamco*, 278 S.W.3d at 337. In any event, appellant concedes that appellee presented evidence that the transfers did not occur at all. We conclude that this evidence and appellee's other evidence was sufficient to meet appellee's burden.

"Once the defendant has produced credible evidence negating all bases of jurisdiction, the plaintiff bears the ultimate burden to establish that the Texas court has personal jurisdiction over the defendant as a matter of law." *MGM Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 408 (Tex. App.—Corpus Christi 1999, no pet.).[1] The Texas Supreme Court has warned that at this stage of the burden-shifting analysis, the plaintiff "risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction." *Kelly,* 301 S.W.3d at 659. At the August 31, 2012 hearing on

---

[1] *See also Tabacinic v. Frazier*, 372 S.W.3d 658, 663 (Tex. App.—Dallas 2012, no pet.) ("If the defendant does so, the burden shifts back to the plaintiff to show the court has personal jurisdiction over the defendant as a matter of law."); *Alliance Royalties, LLC v. Boothe*, 329 S.W.3d 117, 120 (Tex. App.—Dallas 2010, no pet.) ("If the nonresident defendant produces evidence negating personal jurisdiction, the burden returns to the plaintiff to show, as a matter of law, that the court had personal jurisdiction over the nonresident defendant."); *Oryx Capital Int'l, Inc. v. Sage Apts., L.L.C.*, 167 S.W.3d 432, 441 (Tex. App.—San Antonio 2005, no pet.) ("If the defendant produces evidence negating jurisdiction, the burden returns to the plaintiff to show as a matter of law that the court has jurisdiction over the defendant.").

15

appellee's special appearance, the trial court correctly stated that appellant's burden was "not just to plead" jurisdictional facts and warned appellant not to base "everything on pleadings." We conclude that the trial court did not err in "allowing jurisdiction to be decided based on evidence rather than allegations, as it should be." *Id.* Accordingly, we reject appellant's argument to the contrary.

Second, appellant is correct that it did not have the burden to prove the merits of its claims against appellee in order to establish personal jurisdiction. *See Nichols v. Bridges*, 163 S.W.3d 776, 783 (Tex. App.—Texarkana 2005, no pet.) ("When reaching a decision to exercise or decline jurisdiction based on the defendant's alleged commission of a tort, the trial court should examine only the necessary jurisdictional facts and should not reach the merits of the case."). The Texas Supreme Court has cautioned against "equating the jurisdictional inquiry with the underlying merits." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790 (Tex. 2005). Yet, we are not persuaded that the trial court did so in this case.

Appellant argues that it established specific jurisdiction by "properly alleging that [appellee] was the recipient of assets transferred from a Texas resident, during the pendency of a Texas suit, for the purpose of defrauding a Texas resident." As set forth above, appellee purported to negate this factual basis for jurisdiction by presenting evidence that contrary to appellant's allegations, appellee did not receive any transfer of assets. Thereafter, appellant "risk[ed] dismissal of its lawsuit if it [did ]not present the trial court with evidence establishing personal jurisdiction." *Kelly,* 301 S.W.3d at 659. Appellant attempted to meet this burden by presenting evidence that appellee received two transfers of assets from CCDC and DCM.

16

Appellant argues that the trial court erred in granting appellee's special appearance because its ruling was based on an implied finding of fact that there was no transfer of assets from CCDC or DCM to appellee. According to appellant, this was an error because the existence of a transfer goes to the merits of appellant's claims against appellee, in effect, requiring appellant to prove the merits of its claims in order to establish personal jurisdiction. We disagree.

"[W]here the movant in a special appearance motion establishes the nonexistence of an act or omission on which jurisdiction rests, he or she has destroyed the basis for the power of the Texas court to determine the issue of liability." *Nichols*, 163 S.W.3d at 783. "The fact that the showing of an absence of the factual basis for exercise of jurisdiction also tends to show the absence of liability is irrelevant." *Id.*

In this case, appellant alleged that appellee had relevant jurisdictional contacts with Texas by orchestrating and receiving the alleged transfers of assets from CCDC and DCM. These contacts were disputed by appellee, who offered evidence that he did not receive any transfer of assets from CCDC or DCM. As noted above, appellant offered evidence to establish the alleged transfers. Furthermore, counsel for appellant told the trial court that "the issue of transfer . . . goes directly to specific jurisdiction." Accordingly, we conclude that the trial court did not err in considering evidence about whether these transfers occurred as part of the jurisdictional inquiry. Furthermore, we reject appellant's argument that the trial court based its decision on appellant's alleged failure to prove the merits of its claims against appellee. There is nothing in the record to indicate that the trial court based its decision on the alleged failure of appellant to

17

prove the merits of its claims. On the contrary, the record supports the trial court's statement that "we're not litigating the merits of the case in this special appearance."

Third, we express no opinion on appellant's assertion that it proved the merits of its claims against appellee. "[T]he mere existence of a cause of action does not automatically satisfy jurisdictional due process concerns." *Kelly*, 301 S.W.3d at 660. "A state is powerless to create jurisdiction over a nonresident by establishing a remedy for a private wrong and a mechanism to seek that relief." *Id.* Furthermore, "the Texas jurisdictional rule . . . [is not that] guilty nonresidents can be sued here, innocent ones cannot." *Michiana*, 168 S.W.3d at 791. "Instead, jurisdictional analysis always centers on the defendant's actions and choices to enter the forum state and conduct business." *Kelly*, 301 S.W.3d at 660. "The concept of minimum contacts is rooted in the notion that a defendant may reasonably be haled into the forum state's courts when it purposefully, not randomly or fortuitously, engages in activities there." *Id.* Accordingly, we reject appellant's argument that it established specific jurisdiction by proving the merits of its claims against appellee.

Fourth, appellant argues that its evidence was sufficient to raise a genuine issue of material fact regarding whether CCDC and DCM transferred assets to appellee. According to appellant, it "need only present sufficient evidence to establish that a genuine issue of material fact exists on that jurisdictional fact." According to appellant, "[t]hat is the burden of proof that the Texas Supreme Court has applied when 'jurisdictional facts' and 'merits facts' overlap in disputes over the existence of subject matter jurisdiction, and it should be applied in disputes over personal jurisdiction as well." *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex.

18

2004) ("If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder."). Ostensibly for this reason, appellant has not argued that the evidence was legally or factually insufficient to support the trial court's implied finding that there was no transfer of assets. Instead, appellant argues that it produced sufficient evidence to raise a genuine issue of material fact on whether there were one or more transfers to appellee. On this basis, appellant argues that it is entitled to have the finder-of-fact determine personal jurisdiction when it decides the merits of the case.

We note that there is an important distinction between subject matter jurisdiction and personal jurisdiction. Subject matter jurisdiction cannot be waived. *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 642 (Tex. 2009) ("Subject-matter jurisdiction, however, cannot be waived."). In contrast, personal jurisdiction can be waived. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) ("[T]he personal jurisdiction requirement is a waivable right."). As the Fourteenth Court of Appeals has observed:

> A defendant waives its right to contest the trial court's exercise of personal jurisdiction under Texas Rule of Civil Procedure 120a when the defendant: (1) invokes the judgment of the court on any question other than jurisdiction; (2) engages in acts that recognize an action is properly pending; or (3) seeks affirmative action from the court.

*Knight Corp. v. Knight*, 367 S.W.3d 715, 723 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Thus, as a practical matter, under existing precedent, postponing the determination of personal jurisdiction until trial would result in waiver. *See id*. Accordingly, we adhere to the precedent of the Texas Supreme Court that allows the losing party to challenge the legal and factual sufficiency of the evidence to support the

trial court's implied findings with respect to jurisdictional facts. *See BMC Software*, 83 S.W.3d at 798.

As set forth above, appellant has not challenged the legal or factual sufficiency of the evidence to support the trial court's implied finding that there was no transfer of assets. Therefore, we do not address the sufficiency of the evidence to support the trial court's implied finding. *See DeSoto Wildwood Dev., Inc. v. City of Lewisville*, 184 S.W.3d 814, 822 (Tex. App.—Fort Worth 2006, no pet.) ("[B]ecause the findings of fact are unchallenged through a factual or legal sufficiency point, they are binding on the parties and [on] this court.").

In sum, we have addressed and rejected each of the four arguments made in support of appellant's first issue on appeal. Accordingly, appellant's first issue is overruled. We do not address the merits of appellant's second issue because it is moot.

## III. CONCLUSION

The order of the trial court is affirmed.

_____
NORA L. LONGORIA
Justice

Delivered and filed the
25th day of April, 2013.

20